NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

IN RE: THE MALL AT THE GALAXY,
Debtor.

LATOC, INC.

    *Appellant*,

v.

STEVEN P. KARTZMAN

    *Appellee*.

Civil Action No. 2:19-cv-10340

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    Latoc, Inc. appeals the April 4, 2019 final judgment, and certain orders,[1] of the United States Bankruptcy Court entered by the Honorable Vincent F. Papalia, U.S.B.J. D.E. 1. Appellant filed a brief in support of their appeal (D.E. 3), and Appellee Steven P. Kartzman filed a brief in opposition (D.E. 4). For the reasons that follow, the Court determines that the bankruptcy court erred in granting summary judgment. The matter is remanded solely on that basis. The Court does not find merit in Appellant's other arguments.

---

[1] Appellant is appealing several orders that were entered prior to the final judgment: a grant of partial summary judgment entered January 20, 2017; an order barring the amendment of Appellant's answer to include certain affirmative defenses entered October 23, 2017; and an order permitting certain expert testimony entered October 13, 2017.

**FACTS AND PROCEDURAL HISTORY**[2]

This matter stems from the bankruptcy proceeding of The Mall at the Galaxy, Inc. (the "Debtor" or the "Mall"). Appellant Latoc, Inc. ("Latoc") made a $2 million loan to the Debtor before its bankruptcy. The Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, which was later converted to an operating case under Chapter 7 of the Code on June 1, 2011. PSMF ¶¶ 1-2. Steven Kartzman was appointed to serve as the Chapter 7 Trustee (the "Trustee"). *Id.* ¶ 3. On July 30, 2012, the Trustee filed a complaint against Latoc, *inter alia*, to avoid and recover certain allegedly preferential and fraudulent transfers. *Id.* ¶ 4. This complaint and the resulting litigation form the basis of this appeal. Appellant seeks the vacation of the bankruptcy court's final judgment on the basis of several rulings it made prior to and during the trial.

The Mall was operated by its President, Treasurer, and board member, Martin Sergi. *Id.* ¶ 6. Sergi had been a 90% owner of the Mall since 1997. *Id.* He was also a partial owner of various other entities engaged in the rubber recycling business: PermaLife Products, LLC ("PermaLife"), Bristow Rubber Recycling, New York Rubber Recycling, Arizona Rubber Recycling, Piedmont Rubber Recycling, LLC ("Piedmont"), and Permalife Internet, LLC ("PLI") (collectively, the

---

[2] Where applicable, citations are made to page numbers in the appendices (D.E. 3-1, 3-2) submitted by Appellant in connection with this appeal ("A___"). Certain facts are drawn from the undisputed paragraphs of Trustee's statement of material facts not in dispute, submitted in connection with the Trustee's motion for summary judgment during the bankruptcy proceeding. A19-23. This statement is referred to as the "PSMF." Facts are also drawn from an opinion filed by the bankruptcy court, *In re Mall at the Galaxy, Inc.*, No. 10-12435, 2019 WL 1522703 (Bankr. D.N.J. Apr. 4, 2019), which was included in the appendices at pages A752-808.

Latoc's brief (D.E. 3) is referred to as "Appellant Brf." Large portions of the record before the bankruptcy court were included in the Appellant's appendices and certified to be genuine. The Court has relied on the portions of the record submitted by Appellant.

The Trustee's brief (D.E. 4) is referred to as "Appellee's Brf."

"Permalife Entities"). *Id.* Also involved with the Permalife Entities were Dibo and Raffaele Attar. *Id.* ¶ 7. Raffaele Attar served as President of Latoc, an investment company owned by another entity, for which he also served as President. *Id.* ¶ 9.

On or about November 15, 2007, the Mall delivered a subordinated promissory note (the "Note") to Latoc in the amount of $2,000,000. *Id.* ¶ 12. Proceeds from the Note were disbursed between October 2007 and May 2008 into the Mall's bank account. *Id.* ¶¶ 13, 14. Upon receipt of each disbursement, Sergi caused the Mall to re-convey virtually all of the proceeds from the Note to accounts owned by the Permalife Entities. *Id.* ¶ 14. In exchange for this conveyance, the Mall "supposedly" obtained a 100% interest in Piedmont and a 20% interest in PLI. *Id.* ¶ 18. Then, between February 2008 and September 2009, the Mall made payments of approximately $600,000 on the Note to Latoc (the "Pre-Petition Transfers"). *Id.* ¶ 17.

The Pre-Petition Transfers were at issue in bankruptcy trial. The Trustee for the Mall's creditors sought to recover the Pre-Petition Transfers from Latoc, arguing that they were constructively fraudulent. The Trustee argued, among other things, that the Mall did not receive reasonably equivalent value in exchange for transfers. Prior to trial, the Trustee moved for partial summary judgment on the limited issue of reasonably equivalent value. A003-017. Latoc opposed the motion (A098-112), and the Trustee replied (A171-183). The bankruptcy court then ruled on the motion, granting summary judgment in favor of the Trustee. A209-229.

Another issue before the bankruptcy judge was whether the Pre-Petition Transfers could be avoided because the Debtor was insolvent when it made the transfers. The Trustee's expert witness, Kennth DeGraw, issued a "Solvency Report" (the "Report") on April 14, 2016. A775. In the Report, DeGraw opined that while the Mall was insolvent during much of the relevant period, it was not technically insolvent for the quarters ending September 30, 2007 to December

3

31, 2008, although it was illiquid. *Id.* at 776. DeGraw also testified at the trial. *Id.* at 778. Most of his testimony related to whether the Mall was insolvent during the relevant period according to three recognized insolvency tests. *Id.*

However, shortly before the trial began, DeGraw determined that certain aspects of the Report were incorrect. He sought to make three changes to his Report (the "New Arguments"). The first was to add $3.1 million in construction debt on the liabilities side of the September 30, 2007 balance sheet that he inadvertently failed to account for previously (the "Increased Construction Loan Argument"). A272. Next, he sought to amend an input in his adjusted balance sheet analysis after discovering that the appraisal he had relied on included $390,000 in "fictitious rent," which resulted in an increase in the appraised valuation of the Mall by approximately $2.4 million (the "Fictitious Rent Argument"). *Id.* Finally, DeGraw sought to provide additional support for the valuation of a certain obligations to "Blue Sky" (the "Blue Sky Argument").[3] Together, the New Arguments resulted in DeGraw re-classifying the Mall as insolvent as of June 30th, 2008. A359.

Latoc indicated that it would move to exclude the portions of DeGraw's testimony that was contrary to the Report. A675. The Trustee filed a motion in limine seeking an order that (i) the expert testimony was within the scope of the Report and/or (ii) authorizing the expert to supplement and/or correct omissions in the Report to the extent necessary. A260. Latoc opposed the motion. A276. The bankruptcy court ruled on the motion and entered an order permitting DeGraw to testify about the New Arguments but prohibiting him from amending his Report.

---

[3] The new support for the increased value of the Blue Sky obligation was not included in DeGraw's certification in support of the motion in limine. Rather, the Trustee argued in his briefing that he had only recently received new information on that point. A263. The bankruptcy court disagreed, noting that the information had been available since 2009 and considered the Blue Sky Argument in conjunction with the other New Arguments. A358.

4

A374-68.  Importantly, Latoc was also permitted the opportunity to depose DeGraw on those issues.  *Id.*  During the trial, the bankruptcy judge asked DeGraw questions regarding the New Arguments and how they affected his opinions.  A737-741.

In its pre-trial brief, Latoc raised several arguments that the Trustee considered to be affirmative defenses.  The Trustee then sought a ruling that the arguments were in fact affirmative defenses.  A234.  The Trustee added that if they were in fact affirmative defenses, the court ought not to allow Latoc to amend its pleadings to include them.  A234-A339.  The putative defenses related to provisions of the Bankruptcy Code permitting good faith as a defense to avoidance (the "Good Faith Defense").  Latoc opposed the motion.  A308-317.  The bankruptcy court ruled in favor of the Trustee, finding that the arguments did constitute affirmative defenses and denying Latoc permission to amend its answer.  A351-357.

Ultimately, following the trial, the trial court concluded that the Pre-Petition Transfers could be avoided and entered final judgment in favor of the Trustee.  In addition to the final judgment, Latoc contests the following orders: the grant of partial summary judgment entered January 20, 2017; the order barring the amendment of Appellant's answer to include certain affirmative defenses entered October 23, 2017; and the order permitting certain expert testimony entered October 13, 2017.

## I.  APPELLATE JURISDICTION

A district court has appellate jurisdiction over the final judgments, orders, and decrees of a bankruptcy court.  28 U.S.C. § 158(a)(1).  When sitting as an appellate court reviewing a decision of the bankruptcy court, the district court "review[s] the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof."  *In re*

*United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005) (quoting *In re Trans World Airlines, Inc.*, 145 F.3d 124, 130-31 (3d Cir. 1998)).

## II. ANALYSIS

### A. Reasonably equivalent value

Appellant challenges the bankruptcy court's conclusion, at the summary judgment stage, that the Debtor did not receive reasonably equivalent value for the Pre-Petition Transfers. This Court reviews grants of summary judgment *de novo*.[4] A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)[5]. A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering

---

[4] Appellee is incorrect that the appropriate review standard is "clearly erroneous." Appellee's Brf. at 1, 5. Appellee argues that this Court cannot overturn the bankruptcy court's summary judgment decision unless this Court finds the lower court's findings of fact as to the motion were "clearly erroneous." But a court *cannot* make findings of fact at the summary judgment stage. Rather, a court may only determine whether a genuine dispute of material fact exists. The Trustee also argues that "self-serving" statements cannot create a genuine issue of material fact. *Id.* at 3. The Court, however, is not aware of any such prohibition. It would seem that any time a party makes a statement which supports its position, such evidence could be characterized as "self-serving." But the Court is not aware why such evidence cannot be considered at the summary judgment stage, unless it falls into a prohibited category, such as the sham affidavit doctrine, *see Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 253-54 (3d Cir. 2007).

[5] This rule is incorporated into bankruptcy proceedings via Federal Rule of Bankruptcy Procedure 7056, with the exception that "any motion for summary judgment must be made at least 30 days before the initial date set for an evidentiary hearing on any issue for which summary judgment is sought, unless a different time is set by local rule or the court orders otherwise." Fed. R. Bankr. P. 7056. Federal Rule of Civil Procedure 81 provides, in relevant part, that "[t]hese rules apply to bankruptcy proceedings to the extent provided by the Federal Rules of Bankruptcy Procedure." Fed. R. Civ. P. 81(a)(2).

a motion for summary judgment, a [bankruptcy] court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)). The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir.2005) (quoting *Celotex*, 477 U.S. at 325). Even statements from a deposition are insufficient to avoid summary judgment if the statements are conclusory, general denials, or factual allegations not based on personal knowledge. *See Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1146 (3d Cir. 1972).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

The Trustee sought summary judgment on the issue that the Debtor did not receive reasonably equivalent value for the Pre-Petition Transfers. Pre-petition transfers can be avoided if there is actual fraud or, as applicable here, constructive fraud. Whether reasonably equivalent value was received for the transfer is one aspect of the analysis of whether a transfer was constructively fraudulent. 11 U.S.C. § 548(a)(2).[6] The bankruptcy court granted summary judgment on the issue of reasonably equivalent value.

---

[6] The relevant statute provides as follows:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
> . . .
> (B)(i) received *less than a reasonably equivalent value* in exchange for such transfer or obligation; and
> (ii)(I) *was insolvent* on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1) (emphases added).

Reasonably equivalent value is not defined in the bankruptcy code. *In re R.M.L.*, 92 F. 3d 139, 148 (3d Cir. 1996). In the Third Circuit, courts apply a two-step test to determine whether a transferor received reasonably equivalent value. The first step is to determine whether the transferor received any value at all. *Id.* at 150. This value need not be direct, tangible, or even easily quantifiable. *See id.* at 149. For example, even "the ability to obtain substantial credit" and "synergy expected to result" from a leveraged buyout qualify as value. *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F. 2d 635, 647 (3d Cir. 1991). Once it has been established that some value has been conferred, the court applies a totality of the circumstances test to determine whether this value was reasonably equivalent to the amount transferred. *In re R.M.L.*, 92 F. 3d at 153. This evaluation can consider, among other factors, the fair market value of what the debtor receives and the arm's-length nature of the transaction. *See id.*

The question then, on summary judgment, was whether there was a genuine dispute as to a material fact that could lead the factfinder to conclude the Debtor did receive reasonably equivalent value in exchange for the Pre-Petition Transfers. Latoc argues that there was indeed such a genuine dispute. The Debtor indisputably received $2 million from Latoc, then transferred the Loan proceeds to the Permalife Entities, and later transferred approximately $600,000 to Latoc in repayment prior to the filing of the petition. Thus, the critical question is whether the Pre-Petition Transfers (*i.e.*, the approximately $600,000) were constructively fraudulent because the Debtor never received reasonably equivalent value from the Loan (*i.e.*, the $2 million). If the Debtor did not receive reasonably equivalent value from the Loan, then the same conclusion is warranted as to the Pre-Petition Transfers. In other words, the Pre-Petition Transfers of about $600,000 are inextricably tied to the question of whether the Debtor received reasonably equivalent value in the original loan for $2 million.

As will be discussed, the bankruptcy court focused on whether the Debtor received reasonably equivalent value when it transferred the $2 million to the Permalife Entities. But these transfers were irrelevant to the question of whether the Debtor received reasonably equivalent value from the $2 million loan.[7] At first blush, the answer as to whether there was value (and, if so, how much value) is straightforward — $2 million, the amount of the loan. As it was a cash loan, there is no need to determine the "reasonably equivalent" value; the parties knew the precise value, that is, $2 million. The critical question becomes whether the $2 million was actually a loan to the Debtor or whether the Debtor was merely a conduit, or pass-through, to get the $2 million to the Permalife Entities. If the Debtor was a mere conduit, then it did not receive any value, and the Pre-Petition Transfers would also not reflect reasonably equivalent value. The Court remands this matter to the bankruptcy court to make this determination in the first instance.[8]

In ruling on summary judgment, the bankruptcy judge said the following:

> [T]he trustee has submitted ample proofs that are unrefuted that neither Piedmont or PLI had any value at the time of the loan and

---

[7] For example, if a bank loaned a person $5,000 to buy a car, and the person instead gambled the money away, the loan of $5,000 is still lawful and the person owes the bank $5,000 plus the agreed upon interest. A court could not find that the loan was of no value because the person ultimately spent the money in an inadvisable manner.

[8] The Court is not deciding whether the issue is ripe for adjudication at the summary judgment stage or must be tried. The Trustee puts forth significant evidence that the alleged "loan" to the Debtor was a sham in that the Debtor was merely a conduit to get the money to the Permalife Entities. Yet, Sergi testified at his deposition that the Debtor did receive value when it provided the $2 million to Permalife Entities. A067. Sergi claimed that the Debtor received a 20% interest in PLI and became an owner of Piedmont. *Id.* However, there were *no* documents evidencing the payments and ownership to support this assertion. In addition, all of PLI's profits in 2008 were paid out to Permalife Entities, not the Debtor — further evidence that the Debtor did not own PLI. A083. Moreover, in a different bankruptcy proceeding, Sergi stated that the purpose of the Loan was to allow Latoc to make a loan to Permalife. A153 at ¶¶ 11-12. Thus, while there may be significant evidence that undercuts the Debtor's argument, there may also be sufficient evidence to create a genuine issue of material fact precluding summary judgment. The Court, however, leaves this determination to the bankruptcy judge on remand.

10

> there has been no proof to the contrary. In fact, the only proofs are that these entities were – assets were either full encumbered or negligible – and/or negligible and that they were operating at losses. So the Court finds that there was no value.
>
> But even if I were to say there was some value and even if the interests were acquired, even if that could be considered some value, the Court finds that it was not reasonably equivalent to the, in any respect, to the $2 million loan[.]

A227-28. The foregoing analysis by the bankruptcy court would be relevant if the issue were whether the Debtor received reasonably equivalent value when it provided $2 million to the Permalife Entities. But that was not the issue. Instead, the critical inquiry was whether the Debtor received reasonably equivalent value when it received the $2 million loan. The answer is evident — it did, in the amount of $2 million. However, and as noted above, if the Debtor was not the actual beneficiary of the loan, that is, if the Debtor were merely acting as a conduit or pass-through so that Latoc could get the money to the Permalife Entities, then the Debtor received no value. In such a case, the Pre-Petition Transfers not be of reasonably equivalent value.

For the foregoing reasons, the bankruptcy court's grant of summary judgment in favor of the Trustee is reversed.

### B. Admission of Contradictory Expert Testimony

Latoc argues that the trial court abused its discretion in allowing DeGraw to testify on matters that were not included in his expert report. Specifically, Latoc takes issue with the inclusion of testimony regarding the New Arguments. Trial courts are given "wide discretion in making rulings on the admissibility of evidence." *Quinn v. Consolidated Freightways Corp. of Delaware*, 283 F. 3d 572, 576 (3d Cir. 2002). Review on appeal is limited to determining whether the trial court abused its discretion in allowing the evidence. *See id.* at 576 ("We review admissibility determinations, and exclusion of evidence for an abuse of discretion.").

Expert witnesses must prepare and disclose a written report during discovery. Fed. R. Civ. P. 26(a)(2)(B)[9]. The disclosing party has a duty to supplement information in the report if necessary and must do so before pre-trial disclosures are due. Fed. R. Civ. P. 26(e)(2). If a party fails to supplement the information before trial, then the party is prohibited from using that new information "to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1)[10]. The court may also impose various other sanctions. *Id.*

The Third Circuit has considered the following factors in evaluating whether the court properly exercised its discretion in excluding or not excluding witness testimony:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order.

*In re Paoli R.R. Yard PCB Litigation*, 35 F. 3d 717, 791 (3d Cir. 1994) (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F. 2d 894 (3d Cir. 1977)). Moreover, the "exclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." *Id.* at 791-792 (quotations omitted).

---

[9] Rule 26 is incorporated into bankruptcy proceedings via Federal Rule of Bankruptcy Procedure 7026. Fed. R. Bankr. P. 7026.

[10] Rule 37 is incorporated into bankruptcy proceedings via Federal Rule of Bankruptcy Procedure 7037. Fed. R. Bankr. P. 7056.

Having reviewed the trial court's consideration of these factors, this Court does not find that the bankruptcy court abused its discretion. In ruling on the New Arguments, the trial court concluded as follows:

> I am going to allow Mr. DeGraw to testify as to what he saw that changed or affected his opinions, but I'm not going to allow him to amend his report. *And I'm going to allow [Latoc's counsel] the opportunity to depose him if he wants first on those issue or just continue the trial and depose him on those issues*. But the motion . . . to amend the expert report is denied subject to those limitations. And what I – why I'm doing that is that I'm not going to preclude Mr. DeGraw from telling what he –you know, what – telling the Court and the parties what he believes to be true or correct mistakes that affected his report. But what I'm not going to allow him to do because it's not fair and prejudicial is to change his report at this late date.

A364-365 (emphasis added). Prior to making this ruling, the court first analyzed Rule 37. A362-363. Finally, the judge noted that the change was not substantially justified. *Id.* The bankruptcy court then applied the factors originating from *Meyers*. A364.

The trial court did not abuse its discretion. Exclusion of critical evidence is an "extreme" sanction, and a review of the record does not evince that there was "willful deception or flagrant disregard of a court order," as outlined in *Paoli*. On the contrary, a review of the cross-examination of DeGraw by Latoc's counsel indicates that DeGraw simply caught a number of inadvertent errors while reviewing the evidence and his report in preparation for trial. A596-A611.

In *Paoli*, the Third Circuit reversed the district court's exclusion of expert witness testimony, noting, among other things, that the would-be prejudiced party was "already aware of the basic substance of the witness' testimony. *Paoli*, 35 F. 3d at 792. Here, only a limited amount of DeGraw's testimony had changed, all of it based on facts and evidence that were also available to Latoc. The court in *Paoli* further observed that the trial court could have imposed lesser sanctions, such as allowing the defendants to re-depose the expert and tax the costs to the plaintiff.

*Id.* at 793. Here, the trial court did just that, offering Latoc the opportunity to depose DeGraw if it so chose at no cost. A366. The trial court made a reasonable decision—allowing Latoc a new deposition and limiting the scope of testimony regarding the New Arguments. This opportunity – the ability to depose DeGraw on the New Arguments – is critical in the Court's view. Equally important, in the Court's view, is that Latoc does not argue on appeal how the remedy of a deposition was insufficient.

Finally, in its final opinion, the bankruptcy court expressly stated that it did not rely on the New Arguments in coming to a conclusion regarding insolvency. *See* A786 ("[T]he Court is not considering or giving weight to Mr. DeGraw's trial testimony regarding the [New Arguments]." The bankruptcy court did not abuse its discretion in allowing the testimony at issue, and the testimony did not impact the court's final opinion.

### C. Amendment of Answer to Include Good Faith Defense

Latoc argues that the trial court abused its discretion in not allowing it to amend its answer to include the Good Faith Defense shortly before trial. Decisions on whether to permit an amendment of the pleadings generally fall within the trial court's discretion and are reviewed for abuse thereof. *Mullin v. Balicki*, 875 F. 3d 140, 140 (3d Cir. 2017). Denials of amendment for legal reasons, such as whether an amendment would fail to state a claim, are reviewed *de novo*. *Id.*

Leave to amend is governed by Federal Rule of Civil Procedure 15.[11] For amendments prior to trial, the party may amend its pleadings only with the opposing party's consent or with

---

[11] Rule 15 is incorporated into bankruptcy proceedings via Federal Rule of Bankruptcy Procedure 7015. Fed. R. Bankr. P. 7015.

14

leave from the court.[12] Fed. R. Civ. P. 15(a)(2). The trial court "should freely give leave when justice so requires." *Id.* A court will usually deny leave to amend when "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Company*, 839 F. 3d 242, 249 (quotation omitted).

Latoc argues that the trial court abused its discretion in finding that amendment would unfairly prejudice the Trustee.[13] Appellant Brf. at 22. The factual basis of the Good Faith Defense, it claims, were well known to the Trustee, and additional testimony would not have been lengthy or required any evidence on the Trustee's part beyond cross examining the witness.

In finding that the Trustee would be prejudiced by amendment, the trial court observed that many of the parties with knowledge of the Good Faith Defense might not be available to testify. Specifically, Dibo Attar, who actually made the loan on behalf of Latoc, was barred from testifying due to his previous failure to comply with discovery orders. A355. There were also other parties who would conceivably need to be deposed for the first time. A defense that the loan was made in good faith would consider the putative fact that the PermaLife board would not accept a loan

---

[12] The motion in limine seeking denial of amendment appears to have been filed during the trial. Federal Rule of Civil Procedure 15(a) concerns amendments before trial whereas Rule 15(b) concerns amendments during and after trial. Neither party stated with great specificity which rule they were relying on for the purpose of the motion in limine. Appellant cited both 15(a) and 15(b) in both its opposition brief at trial and its appellate brief. A308-309, Appellant Brf. at 22-23.

However, the Trustee filed the motion in limine in response to the appearance of the new affirmative defense in Latoc's pre-trial brief. Rule 15(b) applies to situations in which evidence is brought in that does not correspond to the pleadings and which is objected to or consented to *during the trial*. Therefore, it appears that the appropriate analysis is under Rule 15(a), governing amendment prior to trial.

[13] The Court does not, therefore, consider other issues relevant to the motion in limine, including whether the arguments raised in the pre-trial brief were in fact affirmative defenses.

directly from Latoc. Those board members would have needed to be identified and deposed regarding a transaction that occurred almost ten years prior. The bankruptcy court further observed that this additional period of discovery would have further delayed the trial just before it was about to begin. It also observed that the Trustee was not, as Latoc claimed, on notice of this defense simply because Latoc pled "all applicable sections" of the bankruptcy code as an affirmative defense in its answer.

This Court finds that the bankruptcy court did not abuse its discretion in denying leave to amend the answer to include the good faith defense. Allowing that defense would have forced the Trustee to evaluate and try a completely new aspect of the case. Latoc has not demonstrated that the additional evidence would have necessarily been simple and short or that the Trustee would not have been unfairly prejudiced. Latoc may have only intended to offer testimony from Raffaele Attar, but that does not mean that the Trustee agreed that such testimony was sufficient on the issue. To the contrary, the Trustee appeared put forth credible arguments as to his need for additional discovery to properly investigate the defense and prepare to oppose it. Unlike DeGraw's testimony, discussed above, in which Latoc does not assert that a deposition of DeGraw would have been insufficient, the Trustee has demonstrated that he would have had to take much more additional discovery to appropriately meet Latoc's good faith defense. Appellee's Brf. at 26-27.

The bankruptcy court found that all three of the factors enumerated by the Third Circuit in *Victaulic* were present. The fact that Latoc waited so long to raise the issue constituted undue delay. The bankruptcy court further found that amendment would be futile since Dibo Attar was barred from testifying and, although Raffaele Attar could testify, he was only involved in the Loan after it had been structured and documented. A356. Thus, even if the amendment had been allowed, Latoc would not have been able to meet its burden of proof because it did not have

competent evidence to prove the defense. On appeal, Latoc does not point to any other evidence it might have used to support this defense. The bankruptcy court also found, as to the third factor, that the Trustee would have been unfairly prejudiced by the amendment. The Court finds no error in the bankruptcy judge's analysis.

The bankruptcy court did not abuse its discretion in denying Latoc leave to amend its answer to include the good faith defense.

### III. CONCLUSION

For the foregoing reasons, the bankruptcy court's judgment (and related orders) of April 4, 2019 is **REVERSED** as to the summary judgment decision concerning reasonably equivalent value. The judgment, and related orders, are otherwise **AFFIRMED**. An appropriate Order accompanies this Opinion.

Dated: April 7, 2020

_____
John Michael Vazquez, U.S.D.J.